IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HMC/CAH CONSOLIDATED, INC., | ) | Case No.   11-44738-11 |
| CAH ACQUISITION COMPANY #1, LLC | ) | Case No.   11-44739-11 |
| CAH ACQUISITION COMPANY #2, LLC, | ) | Case No.   11-44740-11 |
| CAH ACQUISITION COMPANY #3, LLC, | ) | Case No.   11-44741-11 |
| CAH ACQUISITION COMPANY #4, INC., | ) | Case No.   11-44742-11 |
| CAH ACQUISITION COMPANY #5, LLC, | ) | Case No.   11-44743-11 |
| CAH ACQUISITION COMPANY 6, LLC, | ) | Case No.   11-44744-11 |
| CAH ACQUISITION COMPANY 7, LLC, | ) | Case No.   11-44745-11 |
| CAH ACQUISITION COMPANY 9, LLC, | ) | Case No.   11-44746-11 |
| CAH ACQUISITION COMPANY 10, LLC, | ) | Case No.   11-44747-11 |
| CAH ACQUISITION COMPANY 11, LLC, | ) | Case No.   11-44748-11 |
| CAH ACQUISITION COMPANY 12, LLC, | ) | Case No.   11-44749-11 |
| CAH ACQUISITION COMPANY 16, LLC, | ) | Case No.   11-44750-11 |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | Chapter 11 – Judge Dennis R. Dow |
| | ) | |

**ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Upon the Order Approving the Debtors' Disclosure Statement and Granting Related Relief [Docket No. 660] dated September 12, 2012 (the "Disclosure Statement Approval Order"), the Court held a hearing (as such hearing may have been adjourned or continued, the "Confirmation Hearing") on November 13, 2012 to consider confirmation of the Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 656] (as subsequently amended, supplemented, or otherwise modified, the "Joint Plan").[1]

At the Confirmation Hearing, the Court considered the Debtors' Memorandum of Law (i) in Support of Confirmation of the Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code and (ii) in Response to Objections Thereto, filed by the Debtors on

---

[1] For the avoidance of doubt, the "Joint Plan" includes all amendments set forth in that certain Notice of Certain Amendments to Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 694] (the "Plan Amendment Notice"). Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Joint Plan.

November 10, 2012, [Docket No. 793] and admitted evidence, including, without limitation, (A) the

Ballot Report (defined below); (B) the (i) the Declaration of  Larry J. Arthur In Support of Debtors'

Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "<u>Arthur</u>

<u>Declaration</u>"); (ii) the Declaration of  Jim Sneed In Support of Debtors' Second Amended Joint Plan of

Reorganization under Chapter 11 of the Bankruptcy Code (the "<u>Sneed Declaration</u>"); (iii) the

Declaration of  Linda R. Atkinson In Support of Debtors' Second Amended Joint Plan of Reorganization

under Chapter 11 of the Bankruptcy Code (the "<u>Atkinson Declaration</u>"), (iv) the Declaration of  Gary A.

Stone In Support of Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the

Bankruptcy Code (the "<u>Stone Declaration</u>") (v) the Declaration of  David W. Thompson In Support of

Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the

"<u>Thompson Declaration</u>"); and (C) all of the evidence proffered or admitted at the Confirmation Hearing,

and heard argument on confirmation of the Joint Plan and on objections filed in opposition thereto.  After

due deliberation thereon and good and sufficient cause appearing therefor, the Court hereby makes the

following findings of fact and conclusions of law (the "<u>Findings and Conclusions</u>"):[2]

**THE COURT HEREBY FINDS AND CONCLUDES** that:

A.     <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.

The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Joint Plan is a core proceeding under

28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Joint Plan

complies with the applicable provisions of the chapter 11 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and should be confirmed.

B.     <u>Filing of Joint Plan</u>.  On September 7, 2012, the Debtors filed the Joint Plan.  The Joint

Plan consists of thirteen (13) separate Plans jointly proposed and filed by each of the Debtors.  Unless

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

stated otherwise, each reference to the Joint Plan (in the singular) in these Findings and Conclusions and the Confirmation Order is a reference to all such thirteen separate Plans. The Court's Findings and Conclusions apply equally, unless otherwise stated, to each of the thirteen (13) separate Plans.

C.    Disclosure Statement Approval Order.    On September 12, 2012, the Court entered the Disclosure Statement Approval Order that, among other things, (i) approved the Debtors' Joint Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 657] (the "Disclosure Statement") as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code, (ii) established procedures for non-debtor counterparties to executory contracts or unexpired leases designated for assumption pursuant to the Joint Plan to object to the amount necessary to cure defaults under such executory contract or unexpired lease, (iii) fixed November 13, 2012 at 9:00 a.m. (Central time) as the date and time for the commencement of the Confirmation Hearing, (iv) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), (v) fixed October 19, 2012 at 5:00 p.m. (prevailing Central time), as the deadline for filing and serving objections to confirmation of the Joint Plan as well as Cure Amount Objections, (vi) established procedures for objecting to the confirmation of the Joint Plan, (vii) established procedures for temporary allowance of claims for voting purposes, and (viii) established certain procedures for soliciting and tabulating votes with respect to the Joint Plan.    In addition, pursuant to the Order Granting Joint Expedited Motion of the Debtors and the Committee for an Order Approving Certain Additional Solicitation Procedures with respect to Amendments to Second Amended Joint Plan [Docket No 712], the Court extended the deadline for parties who had submitted votes rejecting the Joint Plan to amend their votes to accept the Joint Plan to 5:00 p.m. prevailing Central Time on November 8, 2012.

D.    Ballots.  All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the

Bankruptcy Court for the Western District of Missouri (the "Local Rules"), and all other applicable rules, laws, and regulations.

E.    Solicitation.  The Debtors and their representatives, attorneys, and advisors have solicited votes on the Joint Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Approval Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

F.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Debtors and their representatives, attorneys, and advisors are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Section 11.11 of the Joint Plan.

G.    Bankruptcy Rule 3018(a) Motions.  Prior to the Confirmation Hearing, two motions were filed for estimation of claims for voting purposes pursuant to Bankruptcy Rule 3018(a) (the "3018(a) Motions") [Docket Nos. 665 and 666] pursuant to which the Court entered the (i) Order Granting Joint Motion regarding estimating certain Claims pursuant to 11 U.S.C. § 502(c) and Fed. R. Bankr. P. 3018(a) [Docket No. 688] and (ii) Order Approving Motion to Estimate Intercompany Claims Pursuant to 11 U.S.C. § 502(c) And Fed. R. Bankr. P. 3018(a) [Docket No. 726].

H.    Ballot Report.  On October 26, 2012, the Debtors filed the Preliminary Ballot Report of Voting on Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by HMC/CAH Consolidated, Inc. [Docket No. 734] (the "Preliminary Ballot Report") and on November 12, 2012, the Debtors filed the Supplemental Ballot Report of Voting On Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 802] (the "Supplementary Ballot Report" and, together with the Preliminary Ballot Report, the "Ballot Report") containing the results of the ballot tabulation for each of the voting Classes under the Joint Plan.  Based upon the Ballot Report, the Court finds that voting by the holders of Claims in the various Classes entitled to vote on the Joint Plan was as indicated in the Ballot Report as filed with this Court.

I.      <u>Impaired Classes Voting to Accept the Joint Plan</u>.  As evidenced by the Ballot Report, subject to the clarifications contained therein and as described on the record at the Confirmation Hearing, all Voting Classes have accepted the Joint Plan with respect to each of the Debtors in accordance with section 1126 of the Bankruptcy Code.  With respect to the dissenting vote of CFG Community Bank ("<u>CFG Bank</u>") in CAH 11 Class 1B, CFG Bank has agreed to change its dissenting vote to an acceptance pursuant to the terms and conditions of paragraph 49(i.) of this Confirmation Order and <u>Exhibit 4</u> attached hereto.

J.      <u>Joint Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Joint Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code.  In addition, the Court finds that the contemplated issuance of Class 2 Earnout Rights, which are to be distributed as non-voting equity interests in HMC to the Participating New Equity Holders pursuant to the Joint Plan does not violate Section 1123(a)(6) because the holders of such rights have board representation.

K.      <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code with respect to all of the Debtors.  The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Joint Plan under section 1121(a) of the Bankruptcy Code. The Debtors have complied with the applicable provisions of the Bankruptcy Code during the Chapter 11 Cases, including as provided or permitted by orders of the Court.

L.      <u>Joint Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of the Joint Plan, the Joint Plan and all modifications thereto and, as permitted under Bankruptcy Rule 3020(b)(2), the fact that no objection to confirmation has been timely filed to the finding that the requirements of

section 1129(a)(3) have been satisfied. The Debtors and their directors, officers, employees and advisors, among others, and each of their respective professionals, negotiated the Joint Plan in good faith and at arm's length and participated in the Joint Plan formulation process in good faith. The Chapter 11 Cases were filed, and the Joint Plan and all modifications thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtors and the recovery to claimholders. Therefore, the Debtors have proposed the Joint Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Joint Plan with respect to all of the Debtors.

M.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, including administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Joint Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code with respect to all of the Debtors.

N.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The initial board of directors of the Reorganized Debtors will consist of the existing board of directors. Any changes to the board of directors shall be governed by the existing corporate governance provisions of the organizational documents subject to the provisions of the Joint Plan, provisions of the HHI Settlement, and the rights of holders of Class 2 Earnout Rights. The Debtors have disclosed that the existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights of replacement. Therefore, the Debtors have disclosed the initial officers and directors of the Reorganized Debtors, including the identity of any insider that will be employed or retained by the Reorganized Debtors. With respect to the retention of insiders, and proposed compensation related thereto, <u>Schedule 8.4</u> to the Disclosure Statement discloses and the names and salaries of certain key executives. The appointment to, or continuance in, such office of each individual, is consistent with the

interests of holders of Claims and Interests, and with public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Joint Plan with respect to all of the Debtors.

O.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the Bankruptcy Code does not apply with respect to all of the Debtors because there is no governmental regulatory commission that has jurisdiction over the Debtors' or the Reorganized Debtors' rates.

P.     <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The liquidation analysis attached as <u>Exhibit B</u> to the Disclosure Statement and updated at the Confirmation Hearing, the Sneed Declaration, the Stone Declaration, the Atkinson Declaration, the Thompson Declaration, and other evidence proffered or admitted at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to cases under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Interest in an impaired Class that has not accepted the Joint Plan will receive or retain under the Joint Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Joint Plan satisfies section 1129(a)(7) of the Bankruptcy Code with respect to all of the Debtors.

Q.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  The following Classes are unimpaired by the Joint Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Joint Plan: HMC Class 4 (Old Equity Interests), HMC Class 1H (Commerce Bank Secured Claim), HMC Class 1I (Ally Financial Secured Claim), CAH 1 Class 4 (Old Equity Interests), CAH 2 Class 4 (Old Equity Interests), CAH 3 Class 4 (Old Equity Interests), CAH 4 Class 4 (Old Equity Interests), CAH 5 Class 4 (Old Equity Interests), CAH 6 Class 4 (Old Equity Interests), CAH 7 Class 4 (Old Equity Interests), CAH 9 Class 4 (Old Equity Interests), CAH 10 Class 4 (Old Equity Interests), CAH 11 Class 4 (Old Equity Interests), CAH 12 Class 4 (Old Equity Interests), CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim), CAH 16 Class 4 (Old Equity

Interests).  Further, all impaired voting Classes in the Chapter 11 Cases of the Debtors have voted or otherwise agreed to accept the Joint Plan.  In particular, the holder of the CAH 10 Class 1C DMA Secured Claim has not objected to its treatment under the Joint Plan and is deemed to have accepted the Joint Plan.  Additionally, the Court finds that there are no creditors in Class 2 (Priority Non-Tax Claims) in each of the Debtors' cases <u>except</u> CAH 5.  Therefore, the Joint Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to all of the Debtors.

R.    <u>Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Claims and Other Priority Claims under the Joint Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Joint Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code with respect to all of the Debtors.

S.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Each impaired Class of Claims entitled to vote on the Joint Plan has voted or otherwise agreed to accept the Joint Plan, and at least one Class of Claims in each Debtor's bankruptcy case accepted the Joint Plan without including the acceptance of the Joint Plan by any insider.  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Joint Plan with respect to all of the Debtors.

T.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Joint Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.  The financial projections in <u>Exhibit F</u> to the Disclosure Statement, the Sneed Declaration, the Stone Declaration, the Atkinson Declaration, the Thompson Declaration, and the evidence proffered or admitted at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Joint Plan, and (iii) establish that the Joint Plan is feasible and that confirmation of the Joint Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors.  Therefore, the Joint Plan satisfies section 1129(a)(11) of the Bankruptcy Code with respect to all of the Debtors.

U.  <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Debtors have paid or, pursuant to Sections 13.13 of the Joint Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code with respect to all of the Debtors.

V.  <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors do not maintain retiree benefits plans contemplated by section 1129(a)(13) of the Bankruptcy Code and this section does not apply.

W.  <u>Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are corporate entities not subject to any domestic support obligations and this section does not apply.

X.  <u>Rights of Objecting Unsecured Creditors in Individual Debtor cases (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are corporate entities, not individuals, and this section does not apply.

Y.  <u>Transfers of Property under a Plan by Corporation or Trust that is Not a Moneyed, Business, or Commercial Corporation or Trust (11 U.S.C. § 1129(a)(16))</u>.  The Debtors are not corporations or trusts that are not moneyed, business, or commercial corporations and this section does not apply.

Z.  <u>11 U.S.C. § 1111(b)</u>.  No secured creditor elected section 1111(b) treatment.

AA.  <u>Principal Purpose of Joint Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Joint Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Joint Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

BB.  <u>Burden of Proof</u>.  The Debtors, as proponents of the Joint Plan, have met their burden of proving the elements of sections 1129(a) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard.  The Court also finds that Section 1129 (b) does not apply.

CC.  <u>Executory Contracts</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts (including licenses) and unexpired leases pursuant to Article IX of the Joint Plan.  Each assumption or rejection of an executory contract or

unexpired lease (including licenses) pursuant to Sections 9.01, 9.02, and 9.03 of the Joint Plan shall be legal, valid, and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

DD.   <u>Assumption of Contracts and Leases</u>.   A list of each executory contract (including licenses) and unexpired lease to be assumed under the Joint Plan was filed as a part of the Plan Supplement with respect to the Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 747] (the "<u>Plan Supplement</u>") as Schedule 9.01 to the Joint Plan (as such list may have been amended, the "<u>Assumed Contracts and Leases</u>"). The Debtors' assumption of the Assumed Contracts and Leases is a reasonable exercise of the Debtors' business judgment. Contained in Schedule 9.01 was a listing of the Debtors' proposed Cure Amounts required to be paid to the non-debtor parties to the Assumed Contracts and Leases in order to assume such agreements pursuant to section 365 of the Bankruptcy Code.   The following parties objected to the Cure Amounts or to the assumption of an executory contract or unexpired lease: Limited Objection of Siemens Financial Services, Inc. to the Debtor's Proposed Cure Amount [Docket No. 689] (the "<u>SFS Objection</u>"); Limited Objection of Siemens Medical Solutions USA, Inc. to the Debtor's Proposed Cure Amount (the "<u>SMS Objection</u>") [Docket No. 690]; Limited Objection of Computer Programs & Systems, Inc. to the Debtor's Second Amended Joint Plan of Reorganization [Docket No. 695] (the "<u>CPSI Objection</u>"); Labette Health d/b/a Labette County Medical Center Limited Objection to Debtors' Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 704] (the "<u>Labette Objection</u>"); Objection of Cerner Corporation to Cure Amounts in the Debtors' Schedule 9.01 [Docket No.706] (the "<u>Cerner Objection</u>"); Limited Objection of Kingsbridge Holdings, LLC to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization [Docket No. 707] (the "<u>Kingsbridge Objection</u>"); and Limited Objection of 3M Company, Inc. to Debtors' Second Amended Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 710] (the "3M Objection") (together, the "Cure Amount/Assumption Objections").    Except for the Cure Amount/Assumption Objections, no timely Cure Amount Objections were received by the Debtors from the non-Debtor counterparties to the Assumed Contracts and Leases.    Pursuant to the terms of Section 9.02 of the Joint Plan, the Debtors will have cured, or provided adequate assurance that the Reorganized Debtors or their successors or assignees will promptly cure, defaults (if any) under or relating to each of the Assumed Contracts and Leases, to the extent required by Section 365(b) of the Bankruptcy Code.    The Court finds that the payment of cure costs as contemplated in Section 9.02 of the Joint Plan (as specifically modified, where appropriate, by this Confirmation Order, or Schedule 9.01 to the Joint Plan) constitutes prompt and proper cure of such defaults and further finds that adequate assurances of future performance have been provided to counterparties to the Assumed Contracts and Leases.    With the exception of the Cerner Objection, all Cure Amount/Assumption Objections have been resolved or withdrawn by the objecting party.    The Debtor advised the Court that Kingsbridge Objection was resolved by agreement of the parties, and Kingsbridge agreed to withdraw or otherwise not prosecute the Kingsbridge Objection.    The CPSI Objection was resolved pursuant to the provisions of the Plan Supplement.    The SFS Objection, the SMS Objection the Labette Objection, and the 3M Objection were resolved pursuant to paragraph 48 below.    Cerner agreed that the Cerner Objection would not prevent confirmation, and the substantive issues as to the Cerner Objection have been continued to the January 9, 2013 Omnibus Hearing.

EE.    Releases and Discharges.    The releases and discharges of Claims and causes of action described in Article XI of the Joint Plan, including the dismissal with prejudice of the HHI Litigation and the Committee Adversary Complaint, constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are (i) made in exchange for consideration, (ii) in the best interests of the Debtors' estates, claimholders and parties-in-interest, (iii) fair, equitable and reasonable, (iv) integral elements of the restructuring and resolution of the Chapter 11 Cases in

accordance with the Joint Plan and (v) supported by the Creditors' Committee and HHI. Each of the

discharge, release, injunction, indemnification and exculpation provisions set forth in the Joint Plan: (a)

is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is an essential means

of implementing the Joint Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral

element of the transactions incorporated into the Joint Plan; (d) confers material benefit on, and is in the

best interests of, the Debtors, their estates and their creditors; (e) is important to the overall objectives of

the Joint Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11

Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and

(f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

FF.     Modifications to the Joint Plan.  The modifications to the Joint Plan set forth in the

Confirmation Order have been made in a manner consistent with Section 13.10 of the Joint Plan and

constitute technical changes that do not materially adversely modify the treatment of any Claims or

Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional

disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of

the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change

previously cast acceptances or rejections of the Joint Plan.  The modifications to the Joint Plan set forth

in the Plan Amendment Notice were also made in a manner consistent with Section 13.10 of the Joint

Plan and constitute technical changes that do not materially or adversely modify the treatment of any

Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require

additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section

1126 of the Bankruptcy Code.  Pursuant to the Order Approving the Joint Expedited Motion of the

Debtors and the Committee for an Order Approving Certain Additional Solicitation Procedures with

Respect to Amendments to Second Amended Joint Plan [Docket No. 712], holders of Class 3B Claims

were given the opportunity to change their elections between Option 1 and Option 2 under the Joint Plan

and those creditors that had previously voted to reject the Joint Plan were given the opportunity to change their vote to accept the Joint Plan as modified.

GG.    <u>Joint Plan Conditions To Confirmation</u>.  The conditions to Confirmation set forth in the Joint Plan have been satisfied or waived in accordance with the terms of the Joint Plan.

HH.    <u>Joint Plan Conditions To Consummation</u>.  Each of the conditions to the Effective Date, as set forth in Section 10.01 of the Joint Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Joint Plan.

II.    <u>Agreements and Other Documents</u>. The Debtors have made adequate and sufficient disclosure of: (i) the commitment to amend the organizational documents of the Reorganized Debtors as necessary to satisfy the provisions of the Joint Plan and the Bankruptcy Code; (ii) the distributions to be made pursuant to the Joint Plan; (iii) the issuance, for distribution, in accordance with the terms of the Joint Plan, of the Class 1 Earnout Rights, the Class 2 Earnout Rights; (iv) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents relating to any of the foregoing; (v) the adoption, execution and implementation of employment agreements; (vi) the Exit Loan Commitment Letter and the Participating New Equity Holder Funding Commitment Letters; (vii) the contemplated pursuit of a non-exclusive sale of the Debtors' management rights in advance of or subsequent to the Effective Date; and (viii) the other matters provided for under the Joint Plan involving the corporate structure of the Reorganized Debtors.

JJ.    <u>Exit Loan Commitment Letter and the Participating New Equity Holder Funding Commitment Letters</u>. The Exit Loan Commitment Letter and the Participating New Equity Holder Funding Commitment Letters (and the transactions contemplated therein) are essential elements of the Joint Plan and entry into and consummation of such transactions are in the best interests of the Debtors, their estates and their creditors and are approved in all respects. The investment being made by the Participating New Equity Holders pursuant to, and subject to the terms and conditions of, Participating New Equity Holder Funding Commitment Letters represents reasonably equivalent value for the

consideration the Participating New Equity Holders are receiving under the Joint Plan. Each Participating New Equity Holder and their affiliates, shareholders, partners, directors, officers, employees and advisors has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Joint Plan.

KK.   Releases and Exculpation of Participating New Equity Holders.   The releases and exculpation of the Participating New Equity Holders and their principals, employees, agents, officers, directors, financial advisors, attorneys and other professionals, and any of their successors and assigns, as set forth in Sections 11.11, and 11.12 of the Joint Plan are fair and equitable, reasonable and in the best interests of the Debtors and their estates, and are an integral component of the Joint Plan and the restructuring and resolution of the Chapter 11 Cases. More specifically, factors that support approval of the releases and exculpation of the Participating New Equity Holders include: (i) the investment made by the Participating New Equity Holders pursuant to, and subject to the terms and conditions of, the Participating New Equity Holder Funding Commitment Letters, and the debt financing to be provided to the Reorganized Debtors pursuant to the Exit Loan Commitment Letter, constitute a material, substantial contribution to the Debtors' estates, (ii) the Participating New Equity Holders' contributions are necessary and integral to the success of the Joint Plan because the Participating New Equity Holders' investment, and the debt financing provided by the Exit Loan Commitment Letter, provide a substantial source of funds to the Debtors' estates and allow distributions to be made to holders of Claims, which could not be made without the Participating New Equity Holders' investment, (iii) the releases and exculpation of the Participating New Equity Holders are an important part of the Joint Plan because without such releases and exculpation, the Participating New Equity Holders would not have agreed to make the substantial contributions to the Debtors' estates, and (iv) the breadth of the releases and exculpation set forth in the Joint Plan is necessary to the Joint Plan and bears a reasonable relationship to the protection of the Debtors' estates. As set forth in the Ballot Report, the Joint Plan was accepted by holders of Claims entitled to vote thereon. Accordingly, the releases and exculpation set forth in the Joint

Plan for the benefit of the Participating New Equity Holders and their affiliates, principals, employees, agents, officers, directors, financial advisors, attorneys and other professionals, and any of their successors and assigns, are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and applicable law and should be, and hereby are, approved.

LL.    <u>Preservation of Causes of Action</u>.  It is in the best interests of the claimholders that (i) the causes of action that are not expressly released under the Joint Plan be retained by the Reorganized Debtors pursuant to Section 11.10 of the Joint Plan, (ii) the Committee Adversary Complaint shall be dismissed with prejudice on the Effective Date with each party to bear its own costs, and (iii) no causes of action for preferential transfers under Section 547 of the Bankruptcy Code will be prosecuted by the Debtors or Reorganized Debtors.

MM.    <u>Joint Plan Settlements</u>.  The Joint Plan is dependent upon and incorporates the terms of numerous compromises and settlements, including the HHI Settlement Agreement and the agreement with the Committee memorialized in the Plan Amendment Notice (the "<u>Joint Plan Settlements</u>"), all of which are incorporated into and constitute integral parts of the Joint Plan.  The Joint Plan Settlements provide for, <u>inter alia</u>, (i) the dismissal with prejudice of the HHI Litigation and the release of any Claims or causes of action related thereto, (ii) the dismissal with prejudice of the Committee Adversary Complaint and the release of any Claims or causes of action related thereto, and (iii) the mutual release of HHI and the Debtors.  The Joint Plan Settlements are interrelated and interdependent.  Together with the other provisions of the Joint Plan, they constitute a settlement of various issues and disputes between and among the Debtors and several major constituents.  In reaching the Joint Plan Settlements, the Debtors considered the following: (i) the probability of success in the litigation; (ii) the difficulties to be encountered in collection of the possible recoveries under those causes of action (including avoidance actions); (iii) the complexity and likely duration of litigation related to causes of action (including avoidance actions) and the attendant expense and inconvenience resulting from such litigation, (iv) the potential harm to the Debtors that could result from protracted litigation, including the issues related to

15

the Centers for Medicare and Medicaid Services' withholding of the reimbursement of funds to the Debtors, and (v) the interest of the claimholders to confirm and consummate a consensual Joint Plan of reorganization.  The Joint Plan Settlements fall within the range of reasonableness for the resolution of disputes and Claims and are fair and equitable, and in the best interests of the Debtors, the Reorganized Debtors, their creditors, and other parties in interest.  The Joint Plan Settlements have been negotiated at arm's length and have been entered in good faith.  The Joint Plan Settlements avoid costly, time-consuming and risky litigation and pave the way toward achieving a successful reorganization.  Pursuant to §§ 105, 363 and 1123(b)(3) and Fed. R. Bankr. P. 9019 and in consideration of the negotiated treatment under the Joint Plan, the provisions of the Joint Plan, shall constitute good faith compromises and settlements of such claims and controversies. The entry of the Confirmation Order shall constitute the Court's approval of the compromises and settlements of such claims and controversies, as well as a finding by the Court that such compromises and settlements embodied in the Joint Plan and Disclosure Statement are in the best interests of the Debtors, the estates, and all holders of Claims and Interests, are fair, equitable, and reasonable, and are a sound exercise of the Debtors' business judgment.  The settlements and compromises are the product of arm's length negotiations and are approved pursuant to Fed. R. Bankr. P. 9019.  The Debtors are authorized and directed to perform all obligations under and to take all necessary or convenient steps to effectuate the terms of the compromise and settlement embodied within the Joint Plan and Disclosure Statement.

NN.    <u>Distributions of New Securities Are Exempt</u>.  Pursuant to the Joint Plan, Old Equity Interests are unimpaired and shall ride-through the Debtors' bankruptcy proceedings.  However, any equity interests or warrants distributable on account of certain creditors' claims or otherwise pursuant to the Joint Plan, are exempt, pursuant to section 1145(a) of the Bankruptcy Code, from section 5 of the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or

broker or dealer in, a security ("State Securities Laws") and such laws do not apply to the offer of such

securities (the "Exempt Securities").

NOW, based upon these Findings and Conclusions and the record before the Court at the

Confirmation Hearing, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

1. Confirmation. The Joint Plan, which includes the modifications set

forth herein and which are hereby incorporated into and constitute a part thereof, is approved and

confirmed under section 1129 of the Bankruptcy Code. The terms of the Joint Plan as amended and

the exhibits and schedules thereto as amended are incorporated by reference into and are an integral

part of this order (the "Confirmation Order").

2. Objections.   Except with respect to the Objection of Cerner Corporation to

Cure Amounts in the Debtors' Schedule 9.01 [Docket No. 706], the hearing with respect to which was

continued to the December 5, 2012 Omnibus Hearing (and with respect to which agreements the Debtors

have reserved all rights to modify Schedule 9.01 of the Joint Plan after entry of the Confirmation Order to

remove any such agreement with Cerner), all other Objections to confirmation of the Joint Plan that

have not been withdrawn, waived, or settled, and all reservations of rights included therein, are

overruled on the merits.

3. Provisions of Joint Plan and Order Nonseverable and Mutually

Dependent. The provisions of the Joint Plan, this Confirmation Order and the Findings and

Conclusions are nonseverable and mutually dependent.

4. Classification of Claims/Interests and Allowed Amounts of Claims.

The classification of Claims and Interests and Allowed Amounts of Claims for purposes of the

distributions to be made under the Joint Plan shall be governed solely by the terms of the Joint Plan.

The classifications or the relevant amount of a Claim set forth by the Debtors or the Claimant on any

ballots or supplemental ballots tendered to or returned by the claimholders in connection with voting

on the Joint Plan (a) were set forth on such ballots or supplemental ballots solely for purposes of

voting to accept or reject the Joint Plan, (b) do not necessarily represent, and in no event shall be

deemed to modify or otherwise affect, the actual classification of such Claims under the Joint Plan for

distribution purposes, (c) may not be relied upon by any claimholder as representing the actual

classification of such Claims under the Joint Plan for distributions purposes, and (d) shall not be

binding on the Debtors, the Reorganized Debtors, or their estates.

     5.    <u>Effects of Confirmation; Successors and Assigns</u>.   The Debtors are

authorized to consummate the Joint Plan, subject to any deadlines and conditions to consummation

contained in the Joint Plan. Subject to the occurrence of the Effective Date under the Joint Plan, and

notwithstanding any otherwise applicable law, the terms of the Joint Plan (including the Exhibits

thereto and all documents and agreements executed pursuant to the Joint Plan) and this Confirmation

Order shall be binding on (a) the Debtors, (b) the Reorganized Debtors, (c) all holders of Claims

against and Interests in the Debtors, whether or not impaired under the Joint Plan and whether or not,

if impaired, such holders voted on or voted to accept or reject the Joint Plan, (d) each Person

acquiring property under the Joint Plan, (e) any other party-in-interest, (f) any Person making an

appearance in these Chapter 11 Cases, and (g), to the extent acting in such capacities in relation to the

Joint Plan, each of the foregoing's respective heirs, successors, assigns, trustees, executors,

administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or

guardians.  Upon the occurrence of the Effective Date with respect to each Debtor, the Joint Plan shall

be deemed substantially consummated as to such Debtor.

     6.    <u>Continued Corporate Existence; Vesting Of Assets</u>  On the Effective

Date, all property of the estates shall vest or revest as provided in Section 11.02 of the Joint Plan.  As

of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and

dispose of property and settle and compromise Claims without supervision of the Court, free of any

restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly

imposed by the Joint Plan or this Confirmation Order.  The Debtors and Reorganized Debtors are

authorized and permitted to decline to prosecute, settle, compromise, or otherwise resolve any cause

of action, litigation, Claim or Interest or any other matter without approval of the Bankruptcy Court

7.      Intercompany Claims.  The treatment of Intercompany Claims provided

in Section 13.07 of the Joint Plan is approved in its entirety.

8.      Release of Liens.  Except as otherwise provided in the Joint Plan or this

Confirmation Order, or in any contract, instrument, release or other agreement or document entered

into or delivered in connection with the Joint Plan, on the Effective Date, all mortgages, deeds of

trust, liens or other security interests against the property of any Estate are fully released and

discharged (except to the extent reinstated and/or amended in accordance with the Joint Plan), and all

right, title and interest of any holder of such a mortgage, deed of trust, lien or other security interest,

including any right to any collateral thereunder, shall revert to the applicable Reorganized Debtor and

its successors and assigns irrespective of any filing or recordation of any releases (which filings and

releases shall be made by (i) the applicable parties, upon the reasonable request by the Debtors or the

Reorganized Debtors or (ii) the Debtors or the Reorganized Debtors).

9.      Transfers.

(i)      Transfers to the Reorganized Debtors –  With respect to the

transfers of property to the Reorganized Debtors as contemplated in the Joint Plan, including to the

extent the revesting of assets of the Debtors in the Reorganized Debtors pursuant to the Joint Plan are

deemed to constitute "transfers" of property, such transfers of property to the Reorganized Debtors

(a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the

Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims,

encumbrances, or Interests, except as expressly provided in the Joint Plan or this Confirmation Order,

(c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable

non-bankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any liability by

reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including

any laws affecting successor or transferee liability.

(ii) Transfers by the Reorganized Debtors – The transfers of property by

the Debtors to claimholders under the Joint Plan are for good consideration and value.  The proposed

Management Rights Sale (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or

shall vest the transferee with good title to such property, free and clear of all liens, charges, Claims,

encumbrances, or Interests, (c) does not and shall not constitute an avoidable transfer under the

Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the

Reorganized Debtors or the transferee to any liability by reason of such transfer under the Bankruptcy

Code or under applicable non-bankruptcy law, including any laws affecting successor or transferee

liability.

10.     [Intentionally omitted].

11.     <u>Discharge of Debtors</u>.

(a.)     Except as expressly provided in the Joint Plan (and documents

executed in connection therewith) or this Confirmation Order, the Debtors are discharged effective

upon the Effective Date from any "debt" (as that term is defined in section 101(12) of the Bankruptcy

Code), and the Debtors' liability in respect thereof is extinguished completely, whether the debt is

reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or

unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or

known or unknown, if the debt arose from any agreement of the Debtors entered into or obligation of

the Debtors incurred before the Effective Date or from any conduct of the Debtors prior to the

Effective Date or otherwise arose before the Effective Date, including all obligations for interest, if

any, on any such debts, whether such interest accrued before, on, or after the Petition Date.

(b.)     Pursuant to section 1141(d) of the Bankruptcy Code, except as

otherwise specifically provided in the Joint Plan or in this Confirmation Order (including, without

limitation, with respect to the rights of parties to file and prosecute Rejection Damages Claims,

Administrative Expense Claims,  and applications for payment of professional fees, each as

referenced in the Joint Plan and this Confirmation Order,) confirmation of the Joint Plan discharges

and releases, effective as of the Confirmation Date (but subject to the occurrence of the Effective

Date), the Debtors, the Reorganized Debtors and the estates (x) from all Claims and causes of action,

whether known or unknown, and (y) from liabilities of, liens on, obligations of, rights against, and

Interests in the Debtors or any of their assets or properties, in each case regardless of whether any

property has been distributed or retained pursuant to the Joint Plan on account of such Claims, causes

of action, rights, liabilities, liens, obligations and Interests, and in each case including (x) Claims,

causes of actions, rights, liabilities, liens, obligations and Interests that arose before the Confirmation

Date, (y) any Claims, causes of actions, rights, liabilities (including withdrawal liabilities), liens,

obligations and Interests to the extent such Claims, causes of actions, rights, liabilities (including

withdrawal liabilities), liens, obligations and Interests relate to services performed by employees of

the Debtors prior to the Petition Date and that arise from a termination of employment or a

termination of any employee regardless of whether such termination occurred prior to or after the

Confirmation Date, and (z) all Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the

Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such

Claims, causes of action, rights, liabilities, liens, obligations or Interests is filed or deemed filed

under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claims, causes of

action, rights, liabilities, liens, obligations or Interests is allowed under section 502 of the

Bankruptcy Code, or (c) the holder of such a Claim, cause of action, right, liability, lien, obligation

or Interests accepted the Joint Plan.

               (c.)     This Confirmation Order shall be a judicial determination of the

discharge of all Claims against and Interests in the Debtors, subject to the Effective Date occurring.

As of the Effective Date, except as provided in the Joint Plan (and documents executed in connection

therewith) or in the Confirmation Order (including, without limitation, with respect to the rights of

parties to file and prosecute Rejection Damages Claims, Administrative Expense Claims,  and

applications for payment of professional fees, each as referenced in the Joint Plan and this

Confirmation Order,) all Persons shall be precluded from asserting against the Debtors or the

Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief,

liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction,

occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance

with the foregoing, except as provided in the Joint Plan (and documents executed in connection

therewith) or the Confirmation Order, this Confirmation Order shall be a judicial determination of

discharge of all such Claims and other debts and liabilities against the Debtors including all

agreements for calls, puts, issuance of warrants, or sales of securities existing as of the Petition Date,

pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any

judgment obtained against the Debtors at any time, to the extent that such judgment relates to a

discharged Claim or terminated Interest.

   12. Releases, Limitations of Liability and Indemnification.  The releases set

forth in Sections 11.4 and 11.5 of the Joint Plan, the exculpation and limitation of liability provisions

set forth in Section 11.7 of the Joint Plan, and the indemnification obligations set forth in Section 11.8

of the Joint Plan are incorporated in this Confirmation Order as if set forth in full herein and are

hereby approved.

   13. Injunctions.  Except as otherwise specifically provided in the Joint Plan

and except as may be necessary to enforce or remedy a breach of the Joint Plan, from and after the

Effective Date, all Persons or entities who have held, hold or may hold Claims against any of the

Debtors are permanently enjoined, from and after the Effective Date, from (i) commencing or

continuing in any manner an action or other proceeding of any kind on any such Claim against any of

the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or

means of any judgment, award, decree or order against any Reorganized Debtor with respect to such

Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized

Debtor or against the property or interests in property of any Reorganized Debtor with respect to

such Claim, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any

obligation due to any Reorganized Debtor or against the property or interests in the property of any

Reorganized Debtor with respect to such Claim, (v) suspension of a software license or suspension of

contractual services related to a software license, and (vi) asserting any Claims or causes of action

that are satisfied, released, or discharged hereby and under the Joint Plan to the fullest extent

permissible under applicable law, including to the extent provided for or authorized by Article XI of

the Joint Plan and Sections 524 and 1141 of the Bankruptcy Code.

14.    Automatic Stay.  All injunctions and stays in effect in the Chapter 11

Cases pursuant to section 105 or 362(a) of the Bankruptcy Code or otherwise on the Confirmation

Date shall continue to be in full force and effect until the Effective Date, at which time they shall be

dissolved and of no further force or effect, and be replaced by the injunctions set forth herein and in

sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the

filing of financing documents (including Uniform Commercial Code financing statements, security

agreements, leases, mortgages, trust agreements and bills of sale), the enforcement of remedies in

connection with a breach of the Joint Plan, or the taking of such other actions as are necessary to

effectuate the transactions specifically contemplated by the Joint Plan or by this Confirmation Order

prior to the Effective Date; provided further, however, that the Order Granting the Motion of the

Debtors for an Order Enforcing the Automatic Stay against Dannah White shall remain in full force

and effect after the Effective Date, including, without limitation, the voiding of any acts taken in

violation of stay pursuant to that order.

15.    Matters Relating to Implementation of the Joint Plan; General

Authorizations. The approvals and authorizations specifically set forth in this Confirmation Order are

nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any

officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate

and consummate any and all documents or transactions contemplated by the Joint Plan or this

Confirmation Order.  Pursuant to this Order and applicable law (including any analogous laws in the

jurisdiction of organization of each Debtor), the Debtors and the Reorganized Debtors are authorized

and empowered, without action of their respective stockholders or boards of directors, but subject to

consent rights, if any, set forth in the Joint Plan, to take any and all such actions as any of their

executive officers may determine are necessary or appropriate to implement, effectuate and

consummate any and all documents or transactions contemplated by the Joint Plan or this

Confirmation Order, including: (a) to authorize or implement the Management Rights Sale, if any; (b)

to enter into, execute and deliver, acknowledge, adopt or amend, as the case may be, any of the

contracts, leases, instruments, releases and other agreements or documents and Joint Plans, including

deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform

Commercial Code financing statements, trust agreements, mortgages, indentures, security

agreements, and bills of sale to be entered into, executed, delivered, acknowledged, adopted or

amended in connection with the Joint Plan and the transactions contemplated by the Joint Plan, and,

following the Effective Date, each of such contracts, leases, instruments, releases and other

agreements shall be a legal, valid and binding obligation of, and enforceable against, the applicable

Debtor or Reorganized Debtor and any other Person that is a party thereto, in accordance with its

terms and is entered into for good and valuable consideration, including the benefits of the Joint Plan;

(c) to issue for distribution or reserve for issuance in accordance with the terms of the Joint Plan, the

Class 2 Earnout Rights and any stock or warrants provided for in the Joint Plan (upon such issuance,

all such shares or warrants shall be duly authorized and validly issued and outstanding, fully paid,

nonassessable, free and clear of any mortgage, lien, pledge, security interest or other encumbrance of

any kind, and not subject to pre-emptive or similar rights of third parties); (d) to issue the Class 1

Earnout Rights; and (e) to authorize any of the Debtors or Reorganized Debtors to engage in any of the activities set forth in this paragraph or otherwise contemplated by the Joint Plan.  Subject to consent rights, if any, set forth in the Joint Plan, the appropriate officer of the Debtors or Reorganized Debtors or their respective designees shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Joint Plan, this Confirmation Order, and any and all documents or transactions contemplated by the Joint Plan or this Confirmation Order, all without further application to or order of the Court and whether or not such actions or documents are specifically referred to in the Joint Plan, the Disclosure Statement, the Disclosure Statement Approval Order, this Confirmation Order, or the exhibits or schedules to any of the foregoing, and the signature of such officer on a document shall be conclusive evidence of such officer's determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Joint Plan, this Confirmation Order or other documents or transactions contemplated by the Joint Plan or this Confirmation Order.  The secretary of each Debtor or Reorganized Debtor is authorized to certify or attest to any of the foregoing actions.  To the extent that, under applicable nonbankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the stockholders or the board of directors or other governing body of any of the Debtors or Reorganized Debtors, this Confirmation Order, pursuant to section 1142 of the Bankruptcy Code, shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors of the appropriate Debtor or Reorganized Debtor; provided, however, consent and approval rights, if any, set forth in the Joint Plan shall be preserved.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court and shall be deemed effective pursuant to applicable law (including any laws in the jurisdiction of organization of each Debtor) and without further corporate act or action under applicable law.

16.     <u>Directors and Officers of Reorganized Debtors</u>.  The existing officers or managing members of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the board of directors or equityholders to replace them.  The existing directors of the Debtors shall remain in their current capacities as directors of the Debtors, subject to the ordinary rights and powers of the board of directors or equityholders to replace them.

17.     <u>Issuance of Class 1 Earnout Rights and Class 2 Earnout Rights</u>.  The issuance of Class 1 Earnout Rights and Class 2 Earnout Rights as contemplated by the Joint Plan is hereby approved in its entirety. Furthermore, Gene Baldwin, CPA shall be appointed the Plan Monitor with respect to Class 1 Earnout Rights as provided in Sections 1.22 and 7.05 of the Joint Plan.

18.     <u>Exemption from Certain Taxes and Recording Fees</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Joint Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax.  Furthermore, without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or any other Person pursuant to or as contemplated by the Joint Plan, or any agreement regarding the transfer of title to or ownership of, or the granting of a mortgage, deed of trust, deed to secure debt or other lien on or security interest in, any of the Debtors' property in the United States pursuant to or as contemplated by the Joint Plan, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, excise tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code,

shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

19.    Assumption of Executory Contracts and Unexpired Leases. The provisions of Article IX of the Joint Plan relating to assumption of executory contracts and unexpired leases are approved. Only those executory contracts (including licenses) and unexpired leases to which the Debtors (or any of them) are a party that are specifically listed on Schedule 9.01 to the Joint Plan, or that were entered into postpetition, shall be deemed automatically assumed and reinstated in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Neither the inclusion by the Debtors of a contract or lease on Joint Plan Schedule 9.01 nor anything contained in the Joint Plan shall constitute an admission by the Debtors that such lease or contract is an unexpired lease or executory contract or that any Debtor, or any has any liability thereunder except with respect to the Cure Amounts listed on Schedule 9.01. All executory contracts (including licenses) and unexpired leases assumed by the Debtors during the Chapter 11 Cases or under the Joint Plan shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Reorganized Debtors, notwithstanding any provision in such contract or lease (including those described in sections 365(b)(2) and 365(f) of the Bankruptcy Code and any such provision implicated by the consummation of the Joint Plan or any transaction contemplated by the Joint Plan) that prohibits or restricts such assignment or transfer or that enables or requires termination or modification of such contract or lease. This Confirmation Order shall constitute an order approving such assumptions, described in Sections 9.01 and 9.03 of the Joint Plan, pursuant to section 365 of the Bankruptcy Code, upon occurrence of the Effective Date, as of the Confirmation Date. Each executory contract (including licenses) and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any

agreement, instrument, or other document that in any manner affect such executory contract or

unexpired lease and (b) all executory contracts, unexpired leases, agreements or other documents

appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities,

options, rights of first refusal, powers, uses, reciprocal easement agreements, and any other interests in

real estate or rights in rem related to such premises, unless any of the foregoing agreements has been

rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as a part of the

Joint Plan.

           20.     Payments Related to Assumption of Executory Contracts and

Unexpired Leases. This Confirmation Order shall constitute an order approving the assumption of

executory contracts and unexpired leases set forth on Schedule 9.01 to the Joint Plan, pursuant to

section 365 of the Bankruptcy Code, which assumption shall be, upon occurrence of the Effective

Date, as of the Confirmation Date.  The provisions (if any) of each executory contract or unexpired lease

to be assumed and reinstated under the Joint Plan which are or may be in default shall be satisfied solely by

the Cure Amount as indicated on Schedule 9.01.  Objections ("Cure Amount Objections") to assumption

or rejection including Cure Amount Objections, must have been raised in an objection filed pursuant

to the confirmation of the Joint Plan.  If no Cure Amount Objection was timely filed and served, the

non-Debtor counterparty to the contract or lease being assumed is deemed to have consented to

amount and promptness of the Cure Amount payment as contemplated in Section 9.02 of the Joint

Plan and to the assumption of the contract or lease, and the Cure Amount set forth on Schedule 9.01

of the Joint Plan (as of the date indicated therein) or as subsequently agreed to by the Debtors prior to

the Confirmation Hearing shall be controlling notwithstanding anything to the contrary in any

assumed contract or lease or other document, and the party to such contract or lease shall be forever

barred from objecting to the assumption of the contract or lease and from asserting, collecting, or

seeking to collect any additional amounts relating thereto against the Debtors or Reorganized Debtors.

21.  <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The

provisions of Article IX of the Joint Plan relating to rejection of executory contracts and unexpired

leases are approved.  Except with respect to executory contracts and unexpired leases that have

previously been assumed on or before the Confirmation Date, all executory contracts and unexpired

leases not assumed pursuant to Section 9.01 of the Joint Plan (collectively, the "<u>Rejected Contracts</u>

<u>and Leases</u>") shall be deemed automatically rejected on the Effective Date (with such rejection

effective as of the Petition Date).  This Confirmation Order shall constitute an order of the Court

approving such rejections pursuant to section 365 of the Bankruptcy Code. All of the Rejected

Contracts and Leases shall be rejected only to the extent that any such contract or lease constitutes an

executory contract or unexpired lease.

22.  <u>Notice of Entry of Confirmation Order; Notice of Occurrence of</u>

<u>Effective Date</u>.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Debtors shall file

and transmit, or cause to be transmitted, no later than five (5) business days after the entry of this

Confirmation Order, a notice (the "<u>Notice of Entry of Confirmation Order</u>"), substantially in the

form attached hereto as <u>Exhibit 1</u>, which form is hereby approved, to all claimholders, the United

States Trustee and other parties-in-interest, which will inform such parties of the entry of the

Confirmation Order and the related deadlines and procedures for the filing of various claims pursuant

to the Joint Plan and this Confirmation Order.  The Debtors shall also file and transmit, or cause to

be transmitted, no later than five (5) business days following the occurrence of the Effective Date,

notice of the occurrence of the Effective Date in substantially the form attached hereto as <u>Exhibit 2</u>

(the "<u>Notice of Effective Date</u>").  The Notice of Entry of Confirmation Order and the Notice of Effective

Date shall be transmitted to such parties by first class mail, postage prepaid; <u>provided</u>, <u>however</u>, that

notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this

Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar Date or

Confirmation Hearing, but received such notice returned marked "undeliverable as addressed,"

"moved - left no forwarding address," "forwarding order expired," or similar reason, unless the

Debtors have been informed in writing by such Person of that Person's new address.  The notices

described herein are adequate and appropriate under the particular circumstances of the Chapter 11

Cases, and no other or further notice is necessary.

    23. <u>Bar Date For Rejection Damages Claims and Related Procedures</u>.  If

rejection by the Debtors (pursuant to the Joint Plan or otherwise) of an executory contract or an

unexpired lease results in a Claim by the non-Debtor party or parties to such contract or lease (a

"<u>Rejection Damages Claim</u>"), then such Claim shall be forever barred and shall not be enforceable

against either the Debtors or the Reorganized Debtors or such entities' properties unless a proof of

claim is filed with the Clerk of the Court pursuant to the procedures outlined on the Notice of Entry of

Confirmation Order (which procedures are hereby approved) and served upon counsel to the Debtors no

later than January 28, 2013.   The deadline to object to any such Rejection Damages Claim shall be

February 22, 2013 (the "<u>Rejection Damages Claim Objection Deadline</u>").  In the event that any party

with standing objects to a Rejection Damages Claim on or before the Rejection Damages Claim

Objection Deadline, the Bankruptcy Court shall determine the Allowed amount of such Rejection

Damages Claim.  Unless a party with standing objects to a Rejection Damages Claim by the

Rejection Damages Claim Objection Deadline, such Rejection Damages Claim shall be deemed

Allowed in the amount requested.

    24. <u>Professional Claims and Final Fee Applications</u>.  Each professional

person or firm retained with approval by order of the Bankruptcy Court or requesting compensation

in the Chapter 11 Cases pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code, with the

exception of any ordinary course professionals retained by the Debtors pursuant to an order of the

Court (a "<u>Professional</u>"), shall be required to file an application for an allowance of final

compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Effective

Date (a "<u>Final Fee Application</u>") on or before the date which is twenty-eight (28) days after the filing

of the Notice of Effective Date.   Objections to any such applications shall be filed no later than the

date which is forty-nine (49) days after the filing of the Notice of Effective Date.  If an objection is

filed with respect to a Final Fee Application, the party which filed such Final Fee Application shall

be entitled to file, no later than seven (7) days after the filing of such an objection, a reply to such

objection.  To the extent that an objection is actually filed with respect to a Final Fee Application, the

hearing with respect to such Final Fee Application shall occur on the next scheduled Omnibus

Hearing date that is at least seven (7) days after the deadline for the filing of the reply with respect to

such objection (or on such other date as scheduled by the Court).

        25.    <u>Administrative Claims Bar Date</u>.  Requests for payment of

Administrative Claims arising from the Petition Date through the Effective Date shall be filed and

served pursuant to the procedures outlined on the Notice of Effective Date (which procedures are

hereby approved) on or before the date which is twenty-eight (28) days after the filing of the Notice

of Effective Date (the "<u>Administrative Claims Bar Date</u>").  Holders of Administrative Claims that

are required to file and serve a request for payment of such Administrative Claims and that do not

file and serve such a request by the Administrative Claims Bar Date will be forever barred from

asserting such Administrative Claims against the applicable Debtor or their respective property, and

such Administrative Claims will be deemed discharged as of the Effective Date.  The deadline to

object to any such Administrative Claims shall the date which is forty-nine (49) days after the filing

of the Notice of Effective Date (the "<u>Administrative Claims Objection Deadline</u>").   In the event that

any party with standing objects to an Administrative Claim on or before the Administrative Claims

Objection Deadline, the Bankruptcy Court shall determine the Allowed amount of such

Administrative Claim. Unless a party with standing objects to an Administrative Claim by the

Administrative Claims Objection Deadline, such Administrative Claim shall be deemed allowed in

the amount requested.  Notwithstanding the foregoing, no request for payment of an Administrative

Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order of

the Bankruptcy Court or paid or payable by the Debtors in the ordinary course of business.  For the

avoidance of doubt, the Administrative Claims Bar Date shall not apply to the postpetition ordinary

course payment obligations of the Debtors.  Notwithstanding the above, the Internal Revenue Service

shall have an additional reasonable amount of time after the Debtors file their returns with respect to

the pre-Effective Date periods within which to file Administrative Claims with respect to those

returns.

        26.     503(b)(9) Claims.  Notwithstanding anything to the contrary in the

Confirmation Order or Joint Plan including the establishment of the Administrative Claims Bar Date,

Claims pursuant to Section 503(b)(9) of the Bankruptcy Code are governed by the Court's

Twenty-Day Claims Order [Docket No. 199] and the 503(b)(9) Bar Date with respect the filing of

such Claims has passed.  Such Claims are subject to the claims objection deadlines contained in

Sections 8.02 and 8.06 of the Joint Plan.   Any party that does not hold a 503(b)(9) Claim indicated

on Schedule 8.2 to the Joint Plan (a "Scheduled 503(b)(9) Claim") (whether such claim is listed as

"disputed" or otherwise), shall be forever barred from asserting such 503(b)(9) Claim against any of

the Debtors, or their respective property, and such 503(b)(9) Claim will be deemed discharged as of

the Effective Date.

        27.     Exemption From Securities Laws.  Pursuant to and to the fullest extent

permitted by section 1145 of the Bankruptcy Code, Section 5 of the Securities Act and any State

Securities Laws do not apply to the offer, sale, issuance, and distribution of the Exempt Securities.

        28.     Tax Matters.  As provided in Section 13.18 of the Joint Plan, any and

all rights, interests, and benefits in or related to the Debtors' Net Operating Losses shall be and

hereby are retained under the Tax Code and related Rules and Regulations, including, without

limitation, Tax Code Section 382 and the Debtors and Reorganized Debtors are hereby authorized to

carry forward such Net Operating Losses under applicable law.  On the Effective Date, the

Reorganized Debtors shall be entitled to use "Fresh Start" accounting under GAAP for purposes of internal accounting and for tax purposes.

29.     <u>Resolution of Claims and Interests</u>.  Unless otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Joint Plan.  The Debtors or the Reorganized Debtors have the exclusive right to file, prosecute, settle, compromise, or otherwise resolve Claims and Objections to Claims.  The Debtors or the Reorganized Debtors may (a) until 63 days after the entry of this Confirmation Order (unless extended by order of the Court) file objections in the Court to the allowance of any Claim or Interest (whether or not a proof of Claim or Interest has been filed) (except with respect to Claims for Rejection Damages, Administrative Expense Claims, and applications for payment of professional fees which objections, if any, shall be subject to the deadlines referenced above), and/or (b) amend their schedules at any time before their Chapter 11 Cases are closed.

30.     <u>Cancellation of Warrants</u>.  Except as otherwise provided in the Joint Plan, any and all warrants issued in or by the Debtors prior to the Effective Date shall be cancelled and any rights thereunder shall be expressly terminated and discharged upon the occurrence of the Effective Date as provided in Section 11.06 of the Joint Plan.

31.     <u>Joint Plan Settlements</u>.  The Joint Plan settlements and the respective terms thereof as set forth in the Joint Plan, including the dismissal of the Committee Adversary Complaint and the HHI Settlement Agreement as set forth Section 11.13 of the Joint Plan, are hereby approved pursuant to Bankruptcy Rule 9019 as fair, equitable, prudent, and reasonable compromises of the controversies and Claims resolved thereby and are binding upon all Persons affected thereby, and shall be effectuated in accordance with the terms thereof.

32.     <u>Committee Adversary Complaint</u>.  Upon the Effective Date, the Committee Adversary Complaint is hereby dismissed, with prejudice, and any claims or causes of action preserved pursuant thereto are fully and forever released and the Debtors or Reorganized

Debtors are authorized to file a notice of dismissal with prejudice in Adversary Case No.

12-04117-drd.

33.    <u>Payment Of Fees</u>.  All fees payable pursuant to section 1930 of title 28

of the United States Code, as of the entry of this Confirmation Order as determined by the Court at

the Confirmation Hearing, shall be paid on the Effective Date.  Each of the Reorganized Debtors will

continue to pay fees pursuant to section 1930 of title 28 of the United States Code as required by that

section as and when due until a final decree is entered with respect to a particular Debtor.

34.    <u>Authorization To Consummate Joint Plan</u>.  T he Court authorizes the

Debtors to consummate the Joint Plan.  The Debtors are authorized to execute, acknowledge, and

deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of

transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures,

security agreements, and bills of sale and to take such other actions as may be reasonably necessary to

perform the terms and provisions of the Joint Plan, all transactions contemplated by the Joint Plan,

and all other agreements related thereto.

35.    <u>Failure To Consummate Joint Plan And Substantial Consummation</u>.  If

the Effective Date does not occur pursuant the Section 10.03 of the Joint Plan or otherwise, then,

upon written notification filed by the Debtors with the Bankruptcy Court, this Confirmation Order

shall be vacated, no distributions under the Plans shall be made, the Joint Plan, any settlement or

compromise embodied in the Joint Plan (including the fixing or limiting to an amount certain any

Claim or Class of Claims and the HHI Settlement Agreement), the assumption or rejection of

executory contracts or unexpired leases effected by the Joint Plan, and any document or agreement

executed pursuant to the Joint Plan, shall be null and void.  In such event, nothing contained in the

Joint Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Joint

Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any Claims by or against or

Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or

any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort

by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with

respect thereto.  If this Confirmation Order should be so vacated, the time within which the Debtors

may assume, assume and assign, or reject all prepetition executory contracts and unexpired leases

shall be extended for a period of 35 days after the date on which the Confirmation Order is vacated.

Upon the occurrence of the Effective Date with respect to each Debtor, the Joint Plan shall be deemed

substantially consummated as to such Debtor.

36.    Retention Of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the

Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of, or related to,

these Chapter 11 Cases and the Plans, as provided in the Joint Plan to the fullest extent permitted by

law, including, without limitation, to:

(a)    Hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Old Equity Interest and to determine and resolve any objections to the allowance or priority of Claims or Old Equity Interests;

(c)    Enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, revoked, modified or vacated;

(d)    Issue such orders in aid of execution of the Plans, to the extent authorized by section 1142 of the Bankruptcy Code;

(e)    Consider any amendments to or modifications of the Plans or cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f)    Hear and determine any disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plans, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

35

(g)    Determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

(h)    Determine other requests for payment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims;

(i)    Hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for periods ending on or before the Effective Date;

(j)    Determine any motions pending on the Confirmation Date for the rejection, assumption or assignment of executory contracts and unexpired leases and the allowance of any Claim allegedly resulting therefrom;

(k)    Recover all assets of the Debtors, property of the Debtors' estates and the assets of the Reorganized Debtors, wherever located;

(l)    Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plans;

(m)    Determine or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtors that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

(n)    Enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Cases;

(o)    Determine such other matters and such other purposes as the Confirmation Order may provide;

(p)    Issue such orders as may be necessary or appropriate to implement, execute, and consummate the Plans and all contracts, instruments, releases, and other agreements or documents created in connection with the Plans, the Disclosure Statement, or the Confirmation Order;

(q)    Hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plans, the Confirmation Order, or the Bankruptcy Code;

(r)    Issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plans, the Confirmation Order, or any other Order of the Bankruptcy Court;

(s)    Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plans, whether by the Debtors, the Reorganized Debtors, or otherwise, or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Joint Plan or any entity's rights arising from or obligations incurred in connection with the Joint Plan or such documents;

36

(t)     Modify the Joint Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plans, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plans, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plans;

(u)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plans or the Confirmation Order:

(v)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Reorganized Debtors after the Effective Date for any expedited determination of tax under section 505(b) of the Bankruptcy Code);

(w)     Enter an order establishing Bar Dates in respect of any Claims for which Bar Dates have not been established as of the Confirmation Date;

(x)     Determine compromises and settlements of Claims against the Debtors or the estates;

(y)     Determine all questions and disputes regarding title to the assets of the Debtors, the estates, or the Reorganized Debtors;

(z)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to the Joint Plan are enjoined or stayed;

(aa)    Determine any other matters that may arise in connection with or relate to the Joint Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order;

(bb)    Enter an order or final decree closing the Chapter 11 Cases; and

(cc)    Hear any other matter not inconsistent with the Bankruptcy Code.

37.     Creditors' Committee Termination.  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the

Bankruptcy Code, other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.  The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 6.11 of the Joint Plan.

38.    <u>References to Joint Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Joint Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Joint Plan be confirmed in its entirety.

39.    <u>Exhibits</u>.  Each reference to a document or agreement that is in the form attached as an Exhibit or Schedule to the Joint Plan or the Disclosure Statement in this Order, in the Findings and Conclusions, or in the Joint Plan shall be deemed to be a reference to such document or agreement in substantially the form of the latest version of such document or agreement filed with the Court (whether filed as an attachment to the Joint Plan or filed separately).

40.    <u>Inconsistencies</u>.  The provisions of the Joint Plan  and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Joint Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Joint Plan and shall control and take precedence.

41.    <u>Separate Confirmation Orders</u>.  This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate

Chapter 11 Cases for all purposes.  The Clerk of the Court is directed to file and docket this

Confirmation Order in the Chapter 11 Case of each of the Debtors, notwithstanding any order

authorizing administrative consolidation of the Chapter 11 Cases.

42.    References to the Joint Plan or the Debtors.  Unless otherwise

specifically stated in this Confirmation Order or the Joint Plan, any reference to the Joint Plan shall

be a reference to each of the individual Plans with respect to each of the respective Debtors.

Similarly, unless otherwise stated in this Confirmation Order or the Joint Plan, any reference to the

Debtors in the plural shall constitute a reference to all of the respective Debtors as if individually set

forth herein and the satisfaction of any requirement with respect to the Debtors shall constitute a

satisfaction of such requirement as to each and every of the respective Debtors.

43.    Filing and Recording.  This Confirmation Order (a) is and shall be

effective as a determination that, on the Effective Date, (i) all Claims and Interests existing prior to

such date have been released, discharged, and terminated to the extent provided herein or in the Joint

Plan (and documents executed in connection therewith) and (ii) all liens granted hereunder are valid,

perfected and in full force and effect, and (b) is and shall be binding upon and shall govern the acts

of all entities including all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, clerks of court,

governmental departments, secretaries of state, federal, state and local officials, and all other persons

and entities who may be required, by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record, or release any document or instruments. Each and every

federal, state, and local government agency is hereby directed to accept any and all documents and

instruments necessary, useful, or appropriate (including Uniform Commercial Code financing

statements) to effectuate, implement, and consummate the transactions contemplated by the Joint

Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or

similar tax imposed by state or local law.

44.   <u>Priority Tax Claims</u>.  Except as otherwise provided herein or in the

Joint Plan, each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, in an amount

equal to such Allowed Priority Tax Claim on the Effective Date, or as soon thereafter as is

reasonably practicable, pursuant to section 1129(a)(9) of the Bankruptcy Code, unless otherwise

agreed to by the holder of an Allowed Priority Tax Claim and the applicable Debtor.

45.   <u>Sale of Management Rights and Related Transactions</u>. The Debtors are

hereby authorized and empowered, prior to and after the Effective Date, to pursue the sale of the

management rights in the Debtors' hospitals as disclosed in the Disclosure Statement and before the

Court at the Confirmation Hearing (the "<u>Management Rights Sale</u>") on terms that do not differ

materially from those disclosed at the Confirmation Hearing.  To the extent that the Management

Rights Sale closes before the Effective Date, the Debtors are authorized and empowered, subject to

the terms and conditions of the Joint Plan, as modified by this Confirmation Order, to use funds

received pursuant to such transaction for the purposes of funding the Debtors' exit from Bankruptcy

and are further authorized and empowered in such event <u>not</u> to pursue the loan transaction

contemplated in the Exit Loan Commitment Letter.  At the Debtors' sole discretion, such funding

may satisfy Section 10.01(d) of the Joint Plan.  If the closing of a Management Rights Sale occurs

after the Effective Date, the Debtors are further authorized and empowered to use the proceeds from

such sale for the purposes of reducing the amount of the Gemino Loan in the amount of the Exit

Loan Commitment of $3.0 million.

46.   <u>Revision of Projected EBITDA Attendant to the Sale of Management
Rights</u>.  To the extent that the Debtors effectuate a Management Rights Sale which affects the

Debtors' Projected EBITDA, the Projected EBITDA will be revised on a dollar-for-dollar basis to

account for any reductions to the Projected EBITDA as a result of the Management Rights Sale in

order to ensure that such a sale does not negatively impact the payment of Class 1 Earnout Rights

pursuant to the Joint Plan pursuant to the schedule attached to this Confirmation Order as Exhibit 5.

47.     <u>Survival of Certain Provisions of the Cash Collateral Order</u>.  Any

stipulations and provisions contained in the Final Order (I) Authorizing Use of Cash Collateral

Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001, (II) Granting

Adequate Protection, and (III) Granting Related Relief [Docket No. 200] (collectively with all

amendments thereto and/or extensions thereof, the "<u>Cash Collateral Order</u>") with respect to the

extent, validity, enforceability, nonavoidability and amount of the Secured Claims of the Prepetition

Lenders (including, without limitation, all Prepetition Obligations and Replacement Liens, as such

terms are defined in the Cash Collateral Order) are hereby incorporated by reference into, and shall

survive the entry of, the Confirmation Order.  In addition, for the avoidance of doubt, any

requirements related to disclosures required to be made pursuant to paragraph 12 of the Cash

Collateral Order, including, without limitation, as such relates to the contemplated Management

Rights Sale described herein shall continue with same force and effect until the Effective Date.

Within a reasonable period of time upon the receipt, transmittal, or other exchange of non-privileged

drafts, letters of intent, or asset purchase agreements related to the Management Rights Sale between

the Debtors and a potential third party purchaser, and in no event more than three business days after

such receipt, transmittal, or other exchange by counsel for the Debtors, counsel for the Debtors shall

provide copies of such non-privileged drafts, letters of intent and purchase agreements to the

Committee via electronic mail.  Copies of any extant non-privileged drafts, letters of intent or asset

purchase agreements received, transmitted, or exchanged between the Debtors and a potential third

party purchaser that have not been previously provided to the Committee shall be provided via

electronic mail within three business days of entry of this Order.

48.     <u>Modifications to Schedule 9.01 to the Joint Plan</u>.  Schedule 9.01 to the

Joint Plan (Assumed Executory Contracts and Unexpired Leases) is hereby modified as follows:

(a.)     <u>3M Company</u> – The Cure Amounts with respect to the assumed

agreements with 3M shall aggregate to the total amount (including all pre- and postpetition

arrearages) of $120,000 to be paid in 24 equal monthly installments beginning on the 28th day after

the Effective Date and allocated to the applicable Debtors as follows: HMC - $0.00, CAH 1 -

$18,140.97, CAH 4 - $4,312.66, CAH 6 - $21,354.44, CAH 11 - $55,082.12, and CAH 12 -

$21,109.81.  In addition, the parties have agreed, and the court hereby orders, that 3M Company

Claim No. 19 in the amount of $74,072.43 against the estate of HMC shall be, and hereby is,

disallowed.

(b.)     Siemens Financial Services, Inc. – The Cure Amounts with

respect to the two assumed leases between CAH 5 and Siemens Financial Services, Inc. (as of

November 1, 2012) shall total $7,125.60 ($4,851.30 with respect to the 'C Arm Lease' and $2,274.30

with respect to the 'CT Injector Lease').  Additional lease payments which come due in the period

between November 1, 2012 and the Effective Date will be paid in the ordinary course of business or

added to the Cure Amount with respect to the assumed agreements.

(c.)     Siemens Medical Solutions USA, Inc. – The total Cure Amount

with respect to the assumed Equipment Rental Agreement between CAH 16 and Siemens Medical

Solutions USA, Inc. shall be $97,776.07 (as of November 1, 2012).  Additional lease payments

which come due in the period between November 1, 2012 and the Effective Date will be paid in the

ordinary course of business or added to the Cure Amount with respect to the assumed agreements.

(d.)     Labette Health d/b/a Labette County Medical Center – The

total revised Cure Amount with respect to CAH 2's assumption of the agreement with Labette shall

be $41,915.09 (which constitutes a prepetition claim of $33,740.77 and August and September

postpetition amounts outstanding in the amount of $8,174.32) with any additional postpetition

payments due for October to be paid in the ordinary course of business within 60 days after receipt of

invoice, with all other monthly payments after October paid when due under the Network Agreement

(30 days after invoice). In addition, the parties agree, and the Court orders, that Labette's Claim No.

93 against CAH Acquisition Company #1, LLC shall be, and hereby is, disallowed as having been

filed against the incorrect debtor; provided, however, that such disallowance will not impact

Labette's agreed-upon cure treatment as set forth in the Joint Plan (as modified by this Order).

(e.)    Arizant Healthcare – The "Medical Equipment Supply

Agreement" dated July 17, 2008 by and between CAH Acquisition Company #4, Inc. and Arizant

Healthcare, 10393 West 70th Street, Eden Prairie, MN 55344 shall be assumed pursuant to the Joint

Plan with a Cure Amount of $0.00 and Schedule 9.01 shall be amended to account for the foregoing.

(f.)    Toshiba America Medical Credit – The ultrasound equipment

lease dated March 24, 2010 by and between CAH Acquisition Company #3, LLC and Toshiba

America Medical Credit, 1111 Old Eagle School Road, Wayne, PA 19087 shall be assumed pursuant

to the Joint Plan with a Cure Amount of $9,210.08 and Schedule 9.01 shall be amended to account

for the foregoing.

49.    Modifications to the Joint Plan.  At the request of the Debtors, the Joint

Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth below:[3]

(a.)    All modifications to the Joint Plan set forth in Plan Amendment

Notice are hereby incorporated by reference as if fully set forth herein.

(b.)    Section 5.03 of the Joint the Plan will be modified as follows:

**5.03    HMC Class 1C (Sun Finance Secured Claim).**

(a)    Impairment; Voting.  HMC Class 1C Claim is impaired by the
Plan.  The creditor in HMC Class 1C is entitled to vote the amount of the Allowed Sun Finance
Secured Claim to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, Reorganized HMC shall
commence payment on the obligations comprising HMC Class 1C, pursuant to the Plan.  The
maturity date of Sun Finance Loan will be extended to five years from Effective Date of Plan with
principal and interest paid monthly and amortized over the five year term with interest accruing at a
fixed rate of 6%.  All provisions for default rate under the Sun Finance Loan will be excised.  All
other covenants of the Sun Finance Loan will remain unaltered and Sun Finance will retain its
Prepetition liens to the full scope and extent as they existed before the Petition Date.  In exchange for
the payment of $1.00 by HMC to the holder of the HMC Class 1C Sun Finance Secured Claim, such

---

[3] The fully conformed version of the Joint Plan (and all related Exhibits and Schedules) accounting for all of the modifications referenced herein, as well as those contained in the Plan Amendment Notice, is attached to this Confirmation Order as Exhibit 3 and is incorporated as if fully set forth herein.

holder shall agree to reduce the amount of the Allowed Sun Finance Secured Claim from $1.25 million to $1 million effective December 31, 2012.   The holder of the Sun Finance Secured Claim shall be granted, upon the Effective Date, (i) 250,000 shares of common stock in Reorganized HMC and (ii) new warrants exercisable for the purchase of 1,250,000 shares of common stock in Reorganized HMC and on the same terms and conditions as those certain warrants issued to the holder of the Sun Finance Secured Claim before the Petition Date and which may be exercised at Sun Finance's discretion.

(c.)     With the exception of CAH 5 Class 2 (Priority Non-Tax Claims) (currently Section 5.52 of the Joint Plan, which will remain unaltered), the Class 2 (Priority Non-Tax Claims) (including "Section 5.12 HMC Class 2 (Priority Non-Tax Claims);" "Section 5.21 CAH 1 Class 2 (Priority Non-Tax Claims);"  "Section 5.29 CAH 2 Class 2 (Priority Non-Tax Claims);" "Section 5.37 CAH 3 Class 2 (Priority Non-Tax Claims);" "Section 5.44 CAH 4 Class 2 (Priority Non-Tax Claims);" "Section 5.65 CAH 6 Class 2 (Priority Non-Tax Claims);" "Section 5.73 CAH 7 Class 2 (Priority Non-Tax Claims);" "Section 5.81 CAH 9 Class 2 (Priority Non-Tax Claims);" "Section 5.91 CAH 10 Class 2 (Priority Non-Tax Claims);" "Section 5.100 CAH 11 Class 2 (Priority Non-Tax Claims);" "Section 5.107 CAH 12 Class 2 (Priority Non-Tax Claims);" "Section 5.116 CAH 16 Class 2 (Priority Non-Tax Claims);" "Section 5.21 CAH 1 Class 2 (Priority Non-Tax Claims);") shall be deleted from all of the other Debtors' Plans as well as all references to such classes throughout the Joint Plan.

(d.)     Section 5.17 of the Joint the Plan will be modified as follows:

### 5.17 CAH 1 Class 1A (Citizens Secured Claim).

(dd)   Impairment; Voting.  CAH 1 Class 1A Claim is impaired by the Plan.  The creditor in CAH 1 Class 1A is entitled to vote the amount of the Allowed Citizens Secured Claim to accept or reject the Plan.

(ee)   Treatment.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 1 shall commence monthly payments of principal and interest with respect to the obligations comprising CAH 1 Class 1A based on a 20-year amortization following the Effective Date with interest payable at an adjustable rate (adjusted as of the first day of each calendar quarter) equal to the Wall Street Journal Prime Rate plus 1.5% - but which interest rate will not rise above 8.5% or fall below 6.25%.  Citizens shall retain its Prepetition lien and the maturity date of the Citizens Loan will be extended to the earlier of:  (i) 4 years from the Effective Date of the Plan or (ii) the date or replacement of the hospital securing CAH 1 Class 1A's liens.  The Citizens Loan shall be further

modified to remove any provisions allowing default rates of interest.  All other covenants of the Citizens Loan remain unaltered by the CAH 1 bankruptcy case.

(e.)     Section 5.20 of the Joint Plan, CAH 1 Class 1E (Washington

County Secured Claim) shall be deleted from the Joint Plan in its entirety and all references to the

CAH 1 Class 1E (Washington County Secured Claim) will be excised from the Joint Plan.

(f.)     A new Section 5.20 of the Joint Plan shall be added to the Joint

Plan as follows:

**5.20 CAH 1 Class 1D (DMA Secured Claim).**

(a)     Impairment; Voting.  CAH 1 Class 1D Claim is impaired by the Plan.  The creditor in CAH 1 Class 1D is entitled to vote the amount of the Allowed DMA Secured Claim to accept or reject the Plan.

(b)     Treatment.  The Allowed amount of the CAH 1 Class D Claim is $20,237.00 and will be paid without objection from DMA in accordance with an extended repayment plan over 36 months at 5% simple interest in regular monthly amounts by recoupment from future Medicaid payments or by direct payment in full of any monthly shortfall and in accordance with the Plan.

(g.)     Section 5.88 of the Joint Plan is modified to read:

**5.88 CAH 10 Class 1C (DMA Secured Claim).**

(a)     Impairment; Voting.  CAH 10 Class 1C Claim is impaired by the Plan.  The creditor in CAH 10 Class 1C is entitled to vote the amount of the Allowed DMA Secured Claim to accept or reject the Plan.

(b)     Treatment.  The Allowed amount of the CAH 10 Class 1C Claim is $328,269.00 and will be paid without objection from DMA in accordance with an extended repayment plan over 36 months at 5% simple interest in regular monthly amounts by recoupment from future Medicaid payments or by direct payment in full of any monthly shortfall and in accordance with the Plan.

(h.)     Section 5.90 of the Joint Plan, CAH 10 Class 1G (HHS

Overpayment Secured Claim) shall be deleted from the Joint Plan in its entirety and all references to

the CAH 10 Class 1G (HHS Overpayment Secured Claim) will be excised from the Joint Plan.

(i.)     Pursuant to an agreement between the Debtors and the holder

of the CAH 11 Class 1B CFG Community Bank Secured Claim resolving the Preliminary Objection

and Reservation of Rights of CFG Community Bank in Response to Debtors' Second Amended Joint

Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 732] and Amended

Limited Objection and Reservation of Rights of CFG Community Bank regarding Debtors' Second

Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 733],

CFG Bank has agreed to change its dissenting vote in CAH 11 Class 1B to an acceptance and the

terms and conditions of the Joint Plan shall be revised to include all of the modifications contained in

Exhibit 4 attached hereto and incorporated by reference as if fully set forth herein.

(j.)      A new section after Section 5.115 will be added to the Joint

Plan as follows:

**5.116   CAH 16 Class 1E (*Winthrop Secured Claim*).**

(a)      Impairment; Voting.  CAH 16 Class 1C Claim is unimpaired by
the Plan.  The creditor in CAH 16 Class 1C is conclusively presumed to have accepted the Plan and
is not entitled to vote to accept or reject the Plan.
(b)      Treatment.  Winthrop Resources Corporation ("Winthrop")
shall be granted an Allowed Secured Claim to the extent of the value of its Collateral as provided in
Section 506(a) which shall be satisfied no later than the Effective Date by surrender of all such
Collateral in CAH 16's custody and control in full satisfaction of the CAH 16 Class 1E Claim.  In
addition, the Debtors agree to make the Collateral in their possession, custody, and control available
for surrender (and/or collect and ship such Collateral, at Winthrop's expense) to Winthrop, as soon as
practicable after the Confirmation Date.

(k.)      Additional revisions have been made to the Joint Plan to correct

certain minor typographical errors which do not affect treatment of creditors or the meaning of the

Joint Plan.

50.      This Confirmation Order shall be without prejudice to Cerner with

respect to, and to the extent of, the matters related to the Cerner Objection, until such time as a final

order is entered resolving or adjudicating the Cerner Objection.  The Debtors and Cerner each

reserve all of their respective rights with respect to the Cerner Objection, including the Debtors' right

to modify Schedule 9.01 of the Joint Plan after entry of the Confirmation Order to remove any such

agreement with Cerner to the extent that the amount or timing of cure is unduly burdensome to

Debtors in their business judgment.

Dated: December 12, 2012
        Kansas City, Missouri

<u>/s/Dennis R. Dow</u>
Hon. Dennis R. Dow
United States Bankruptcy Judge